CAMPAU *v.* CITY OF DETROIT.

1. EMINENT DOMAIN — CONFIRMATION OF AWARD CONSTITUTES A JUDGMENT—OWNER ENTITLED TO INTEREST.

Since confirmation of an award by the court in condemnation proceedings under the Detroit city charter, which closely follows 1 Comp. Laws 1915, § 3376 *et seq.*, constitutes a judgment for all practical purposes, the owner of the land is entitled to interest thereon at the rate of 5 per cent. (2 Comp. Laws 1915, §§ 5997-5999) from the date of confirmation (3 Comp. Laws 1915, §§ 12835, 12970), notwithstanding the city has one year in which to pay, during which time the owner has possession of the land.

2. SAME—CONSTITUTIONAL LAW—JUST COMPENSATION—INTEREST.

In view of the 5th Amendment to the Constitution of the United States requiring "just compensation" to be made for private property taken for public use, and Art. 13, § 1, of the Constitution of Michigan requiring the necessity for such taking to be first determined and "just compen-

On right to interest on award of damages in eminent domain proceedings, see note in L. R. A. 1916C, 1109.

sation" to be made therefor, *held*, that the owner of private property taken under condemnation proceedings is entitled to interest on the award from the date of its confirmation by the court.

Certiorari to Wayne; Mandell (Henry A.), J. Submitted October 9, 1923. (Calendar No. 31,092.) Decided December 19, 1923.

Mandamus by Daniel J. Campau to compel the city of Detroit and another to pay interest on an award in certain condemnation proceedings. From an order denying the writ, plaintiff brings certiorari. Reversed and remanded.

*Moore & Moore*, for appellant.

*Walter Barlow* (*Richard I. Lawson*, of counsel), for appellees.

STEERE, J. Plaintiff seeks by certiorari to reverse an order of the circuit court of Wayne county dismissing his application for a mandamus asking that defendants be required to pay or cause to be paid to him the sum of $886,882.50, awarded in condemnation proceedings as compensation for certain land desired by the city, "and the interest thereon from the 30th day of June, 1922, as damages for the delay in making such payment."

The city of Detroit instituted condemnation proceedings in the recorder's court of said city, on September 24, 1921, to acquire for public use as a park certain lands lying within its boundaries. The case is entitled,—

"In the matter of the petition of the City of Detroit to provide for a site for park purposes and for municipal buildings to be thereon constructed, located south of Harper avenue and east of Connors avenue, for the use and benefit of the public."

Plaintiff herein owned most of the tract desired and was the principal respondent. Three other small pieces were included for which the total award amounted to less than $5,000.

Proceedings were duly had in accordance with provisions of title 8, chapter 1, of the city charter which follows closely chapter 75, 1 Comp. Laws 1915, § 3376 *et seq.* On June 30, 1922, a jury called to decide the questions raised found it necessary to take appellant's land for public use and awarded him as just compensation therefor damages in the sum of $886,882.50, which was upon the same date duly confirmed by a judgment of the court.

Defendant's answer states that the city—

"has been ready and willing to pay the plaintiff his said award of $886,882.50 ever since June 5, 1923, and has repeatedly offered to him said award since that date, but he has refused to accept payment thereof unless he is paid interest as well thereon at the rate of five (5) per cent. per annum from June 30, 1922, the date of the confirmation of the award to him by the court."

The only question presented to this court for determination is whether appellant is entitled to legal interest on the award from the time of the judgment of confirmation until it is paid or tendered. Section 16 of title 8, chapter 1, of the city charter of Detroit, relative to payment, is the same as section 16 (1 Comp. Laws 1915, § 3391) of the general law and provides as follows:

"SECTION 16. Within one year after confirmation of the verdict of the jury, or after the judgment of confirmation shall on appeal be confirmed, the council shall set apart and cause to be provided in the treasury, unless already provided, the amount required to make compensation to the owners and persons interested for the private property taken as awarded by jury, and shall in the resolution setting apart and providing said sum, if not already provided, direct the city

treasurer to pay to the persons respectively entitled to the money so set apart and provided, to each his or her proportion, as ascertained and awarded by said verdict. And it shall be the duty of the treasurer to securely hold such money in the treasury for the purpose of paying for the property taken, and pay the same to the persons entitled thereto, according to the verdict of the jury, on demand, and not pay out the money for any other purpose whatever. The council may provide the necessary amount by borrowing from any other money or fund in the treasury, and repay the same from money raised to pay the compensation awarded by the jury when collected, or otherwise, as it may provide. Whenever the necessary sum is actually in the treasury for such purpose, the treasurer shall make and sign duplicate certificates, verified by his oath, showing that the amount of compensation awarded by the jury is actually in the treasury for such purpose, the treasurer shall make and sign duplicate certificates, verified by his oath, showing that the amount of money is in the treasury for payment of the award for the private property taken in the case, giving the title of the case, and shall cause one of the certificates to be filed in the office of the clerk of the court in which the proceedings were had, and the other to be filed with the city clerk, which certificate shall be *prima facie* evidence of the matters herein stated. Whenever the amount of the compensation is in the treasury, and thus secured to be paid, the council may enter upon and take possession of and use such private property for the purpose for which it was taken, and may remove all buildings, fences and other obstructions therefrom. In case of resistance or refusal on the part of any one to the council or its agents and servants entering upon and taking possession of such private property for the use and purpose for which it was taken, at any time after the amount of the compensation aforesaid is actually in the treasury ready to be paid to those entitled thereto, the council by the corporation counsel may apply to the court, and shall be entitled, on making a sufficient showing, to a writ of assistance to put the city in possession of the property."

Plaintiff's contention is that confirmation by the

court of the award is a judgment, and by express statutory provisions judgments draw interest at the rate of 5% per annum in this State.    For the city it is contended that this is a special proceeding authorized for the public welfare, not according to the course of common litigation or common law, gives the condemning municipality a year without default after confirmation of the award in which to raise the money and make payment, leaves the condemnee in possession, use and enjoyment of the property condemned until paid for and there is no provision in the charter or act it follows for adding interest to the award.

That this is a judicial proceeding, and confirmation of the award by the court is a judgment is settled law in this State.    It is the result of the exercise of judicial authority in which the court finally determines and adjudicates that the sum awarded is at that time just compensation to the owner for his private property.    It is immune from collateral attack, is conclusive upon and enforceable at the instance of all parties to the proceeding, and in general ranks with judgments for all practical purposes.    *Scotten* v. *City of Detroit,* 106 Mich. 564; *Balch* v. *City of Detroit,* 109 Mich. 253; *Zoltowski* v. *Judge of Recorder's Court,* 112 Mich. 349.

The legal rate of interest in this State is 5% per annum unless agreed to the contrary by the parties within the maximum permitted (2 Comp. Laws 1915, §§ 5997-5999).    Judgments or decrees bear interest from the date of their rendition unless otherwise agreed or provided (3 Comp. Laws 1915, §§ 12835, 12970).    In that aspect of the case defendant's counsel contend that the condemnation law otherwise provides by giving the city a year after consummation of the award in which to raise the money, pay the judgment and take over the property condemned.

Article 5 of the Constitution of the United States,

as amended, concludes, "nor shall private property be taken for public use, without just compensation."

Section 1, article 13, of the Constitution of this State also provides (italicized as shown) that:

"Private property shall not be taken by the public nor by any corporation for public use, without *the necessity therefor being first determined and just* compensation therefor being first made or secured in such manner as shall be prescribed by law."

Both the charter under which this condemnation was had and the statute of this State upon that subject prescribe that the questions of necessity and just compensation shall be determined and fixed by the award of a jury, upon which the court shall render a judgment of confirmation in the exercise of its judicial functions, with the binding force before pointed out. It amounts to a present forced sale of the property at the then cash value awarded, giving the purchaser, however, on or before a year from date in which to pay for it.

While the purchaser may not take possession until payment is made, it leaves the forced seller in doubtful possession as a tenant by sufferance of the property which he no longer owns, liable to be dispossessed at the option of the purchaser any week day in the year. He cannot sell or lease it, nor improve or till it, with the certainty of harvesting; his limited and beneficial use of it are but from day to day at the pleasure of the purchaser. Whatever his future plans and purposes in regard to his property were, they are ended; and if it is unimproved his restricted possession has but little if any value; while the purchaser, having by condemnation proceedings secured the property and compelled him to part with it at the price fixed by and at the time of the hearing and judgment, can at its option rest secure and have the beneficial use of the sum awarded for a year thereafter. How

long it may choose to do so within that limit being unknown it is conceded future interest on the just compensation awarded at the time of the hearing and judgment cannot be taken into consideration in making the award or by the court, in its confirmatory judgment.

Even admitting there can be no interest under the constitutional prohibition until there is a "taking," either actual or constructive, it can logically be contended that instituting and pressing condemnation proceedings against private property to a point which, through no contractual relations or tort on his part, abridge and destroy the owner's right to full enjoyment and beneficial use of his property, as noted, amounts to a constructive taking.     It has been so held in other jurisdictions.     In *Warren* v. *Railroad Co.,* 21 Minn. 424, it is said:

"This court has decided that so far as the act authorizes the company to enter upon and take the lands, before making compensation, it is unconstitutional and void;   *   *   *   so that there can be no actual entering upon and taking, to fix the point of time at which the value shall be assessed.     And the court has several times held that, for this purpose, the filing of the award of the commissioners is to be deemed a constructive entering upon and taking.     The rights of the parties are to be determined as of that time.     The verdict finds, in effect, that at that time the company ought to have paid the owner the value, as the jury assess it.   *   *   *   From the time of the award, he is practically deprived of his right to dispose of the land.     His possession is precarious, liable to be terminated at any time; he cannot safely rent; he cannot safely improve; if he sows, he cannot be sure that he will reap."

This rule was followed in *City of Minneapolis* v. *Wilkin,* 30 Minn. 145 (15 N. W. 668), which, as here, involved condemnation of property for a city park under a law prohibiting taking possession and passage

of title until the award had been paid, or money appropriated and set apart in the city treasury to pay the same. In both cases interest was allowed from the time of the award until it was paid or the money set apart and available to the owner for its payment.

In *Cook* v. *Park Commissioners*, 61 Ill. 115, also a proceeding in condemnation of land for park purposes in which possession could not be taken or the title pass until payment of the award or the money was available to the owner, the court said in part:

"But we are asked to decide whether the judgment will not, by force and operation of law, bear interest from the time of its rendition. * * * Though no execution could be ordered, the judgment was the conclusion of the law upon the facts found by the jury. The allowance of a claim against an estate is a judgment. Judgments may be rendered against an executor or administrator for the debt of the deceased, and no execution can issue in either case, but they bear interest.

"We think that interest should be allowed upon judgments, when final, in proceedings of this character. They are within the spirit, if not the terms, of the statute which allows interest upon all judgments recovered."

The proposition which we have before us is concisely thus introductorily stated in 2 Lewis on Eminent Domain (3d Ed.), § 742:

"The question of interest in condemnation cases has been the subject of much diversity of opinion. In the absence of any statutory provisions controlling the subject, the rules in respect to interest must be derived from the constitutional provision requiring just compensation to be made for property taken."

To various features of the author's treatment of the subject in that lengthy section a host of decisions from different jurisdictions is cited, out of which may be culled supporting authority for almost any aspect of the question. Some, even in the same State, seem

irreconcilable but in the great majority divergence of views is largely traceable to differences in statutory provisions under consideration in the respective cases.

The charter before us and the statute it follows are silent on the subject of interest. But our statutes provide judgments draw interest; and this court has decided that awards properly confirmed by a judicial order are judgments. We are not cited in the briefs of counsel to any decision in this court dealing with the question of interest on awards, and the only case we find touching the subject is the old case of *People, ex rel. Anderson,* v. *LaGrange Township Board,* 2 Mich. 187, which counsel correctly omit as not controlling here, but which is cited in Mills on Eminent Domain (2d Ed.), § 175, to the proposition that, "In Michigan interest is not considered to be due except by custom or statute." That case involved proceedings by township authorities in laying out a highway under a statute (chap. 25, Rev. Stat. 1846) providing for determination of damages by appraisers, the amount returned by them to be certified and filed with the township clerk as an obligation of the township. No determination of or judgment for the amount in any judicial proceeding was had or required by the act. Relator thereafter made application to the township board for an order on the township treasurer in his favor for the amount claimed. In denying the writ the court said no interest could be legally claimed but by statute or custom; and referring to the general statute giving interest on judgments pointed out that it applied "only to amounts liquidated or ascertained in the course of judicial proceedings," which so far as it goes is an intimation that had relator's claim gone to judgment in a judicial proceeding he would be entitled to interest.

Relative to constitutional taking it is said in 4 McQuillin on Municipal Corporations, p. 3095:

"The law as to what constitutes a taking has been undergoing a radical change during the last few years. Formerly it was limited to the actual physical appropriation of the property or a divesting of title, but now the rule adopted in many jurisdictions and supported by the better reasoning is that when a person is deprived of any of certain rights in and appurtenant to tangible things, he is to that extent deprived of his property, and his property may be *taken,* in the constitutional sense, though his title and possession remain undisturbed; 'and it may be laid down as a general proposition, based upon the nature of property itself, that, whenever the lawful rights of an individual to the possession, use or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is, *pro tanto,* taken, and he is entitled to compensation.' "

The quotation being from 1 Lewis on Eminent Domain (3d Ed.), § 65; *vide,* also, § 67.

Back of ordinances, charters and statutes on the subject lie our Federal and State constitutional prohibitions which may not be ignored.

In the recent case of *Seaboard Air Line R. Co.* v. *United States,* 261 U. S. 299 (43 Sup. Ct. 354), involving condemnation proceedings instituted by the Federal government, the court said in awarding interest from the time of taking:

"Section 10 of the Lever act authorizes the taking of property for the public use on payment of just compensation.    There is no provision in respect of interest.    Just compensation is provided for by the Constitution, and the right to it cannot be taken away by statute.    Its ascertainment is a judicial function. *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, 327 (13 Sup. Ct. 622).

"The compensation to which the owner is entitled is the full and perfect equivalent of the property taken. *Monongahela Navigation Co.* v. *United States, supra.* It rests on equitable principles, and it means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property

had not been taken. *United States* v. *Rogers,* 168 C. C. A. 437, 257 Fed. 397, 400.     He is entitled to the damages inflicted by the taking. *Northern Pac. R. Co.* v. *Telegraph Co.,* 144 C. C. A. 489, 230 Fed. 347, 352 (L. R. A. 1916E, 572), and cases there cited.     *     *     *

"It is obvious that the owner's right to just compensation cannot be made to depend upon State statutory provisions.     *     *     *     The requirement that 'just compensation' shall be paid is comprehensive, and includes all elements, and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation.     Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value, paid contemporaneously with the taking.     Interest at a proper rate is a good measure by which to ascertain the amount so to be added."

*Vide,* also, *Brown* v. *United States,* 263 U. S. 78 (44 Sup. Ct. 92).

It is true as defendant's counsel points out that in instituting such proceedings under the Federal law, and of some States, the condemnor may and usually does first take actual possession of the property sought to be condemned, and it is argued that in those jurisdictions where judgment precedes that right, leaving the owner in possession till paid, the beneficial use attending such possession should be construed as the equivalent of interest on the award.     Some authorities are found favoring such rule in construction of their statutes.     We think the great weight of authority repudiates any such general rule, although generally recognizing that if the owner has not been disturbed in his possession of the premises and has profited thereby, either in receipt of rents or other beneficial use, it should be taken into consideration

as an offset to the interest he otherwise would be entitled to, and the same abated accordingly.

In the instant case it was stated by plaintiff's counsel on the argument that the tract involved here is unimproved and mostly woodland and incapable of any temporary beneficial use, which was not denied beyond the statement that he was left in undisputed possession with the same right he always had to use it as he wished for whatever purpose it was then susceptible of.    In the case of *Uniacke* v. *Railway Co.*, 67 Wis. 108 (29 N. W. 899), where the railroad company had not taken actual possession of the condemned property and claimed for that reason imposition of interest on the award was inequitable, the court held interest was properly allowed from the date of filing the award and said:

"It should be observed that the burden is upon the party seeking to condemn land to show the existence of conditions which will operate to take a given case out of the general rule in respect to interest.    It is not sufficient to show merely that such party has not actually taken possession of the land.    The fact that it has been condemned and is liable at any time to be so possessed, will necessarily, in most cases, seriously interfere with its beneficial use by the former owner,— often entirely destroy it."

In this case we are not troubled with any question of damages or interest based on actual or constructive taking prior to the award, as in many cases to be found.    No claim is or could be made for interest prior to the judgment of confirmation in view of what is said in *People, ex rel. Anderson,* v. *LaGrange Township Board, supra.*    As already pointed out we have before us a judgment by a court of record confirming an award in condemnation proceedings which ranks with judgments for all practical purposes.    Judgments draw interest in this State.    Its only peculiarity is a statutory provision giving the defend-

ant on or before a year thereafter in which to pay it.     The following views under a somewhat similar statute in *Martin* v. *City of St. Louis,* 139 Mo. 246 (41 S. W. 231), are well in point:

"The judgment has a dual aspect.     It finds this sum is the just compensation, due at the date of its rendition, to the land owner, which he shall receive before he shall be deprived of his property, and at the same time it decrees that immediately upon the rendition of such judgment the city may pay the money and take the land.     It completely meets the suggestion of the supreme judicial court of Massachusetts that the true rule of compensation is that the price is due and ought to be paid at the moment the purchase is made, that is to say 'to pay the compensation with one hand, whilst they apply the ax with the other; and this rule is departed from only because some time is necessary, by the forms of law, to conduct the inquiry; and this delay must be compensated by interest.'     *Parks* v. *City of Boston,* 15 Pick. (Mass.) 198."

When judgment was entered upon the award and no appeal taken, the rights and obligations of the parties were legally adjudicated and fully fixed.     The amount of defendant's indebtedness for the land it compelled plaintiff to sell was as finally and forcibly determined as by any other judgment.     Its absolute right and title to the property only awaited payment of a judgment, based on just compensation for the property at the time it was rendered.     Defendant at its option could pay forthwith or at any time thereafter within the year granted it before payment could be enforced, while plaintiff could only mark time and wait for his money.     The charter and statute it follows are silent as to interest, either during or after the year of optional deferred payment.     It is not disputed, and was in effect conceded at the hearing, that plaintiff would be entitled to interest after the year expired.     If constitutional grounds be taken as

the test, just compensation would seem to require interest on his judgment the first year after it was rendered as well as those which follow. Looking to legislation for authority we find none providing that he shall not have interest, and the only statute we have on that subject provides without exception that judgments shall draw interest at 5 per cent. from time of rendition.

We conclude that interest upon final judgments in proceedings of this kind is within the letter and spirit of the statute granting interest upon all judgments recovered.

The order denying plaintiff's application for a writ of mandamus is reversed, with costs, and the case remanded for further proceedings in accordance with this opinion.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.